J-S12035-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| DARYL ALLEN DUBS, | : | |
| | : | |
| Appellant | : | No. 992 MDA 2016 |

Appeal from the Judgment of Sentence April 29, 2016
in the Court of Common Pleas of York County,
Criminal Division, No(s): CP-67-CR-0003057-2015

BEFORE: PANELLA, OTT and MUSMANNO, JJ.

MEMORANDUM BY MUSMANNO, J.: **FILED APRIL 13, 2017**

Daryl Allen Dubs ("Dubs") appeals from the judgment of sentence imposed following his convictions of aggravated assault, simple assault, and recklessly endangering another person. *See* 18 Pa.C.S.A. §§ 2702(a)(1), 2701(a)(1), 2705. We affirm.

On January 26, 2015, at approximately 8:00 p.m., Allyson James ("James"), who was in an intimate relationship with Dubs, arrived at her apartment. She found her front entrance open, two strangers sitting on her couch, and empty bottles of liquor scattered throughout her living room. James asked the two strangers where Dubs was located, and they told her he was upstairs in the bedroom. James walked up to her room, saw Dubs sleeping on her bed and tried to wake him. On James's first attempt to wake Dubs, she tried pulling the sheets off him. Dubs responded by pulling

them back on him.  James became angry and slapped Dubs across the face. Without getting up, Dubs told James to get away from him.

James then went downstairs and asked the two strangers to leave her residence.  The strangers gathered their belongings and left the apartment, after which James returned to her room.  James stood at the foot of the bed and tried to pull the sheets off of Dubs.  Dubs again pulled the sheets back on him.  James then yelled at Dubs to get out of the bed.

Dubs woke up, lunged at James, and threw her down on the bed. Dubs straddled James and held her down by the neck.  Dubs then began to strike James across the face while squeezing her neck.  James found it difficult to breathe and almost lost consciousness several times.  As Dubs continued to choke James, he told her that he wanted to show her what it felt like to be hit.  James attempted to block Dubs's blows with her hands, and free herself from Dubs by kicking and pushing herself away from him.

James eventually freed herself from Dubs and crawled to a corner of the room.  Dubs followed her, and again straddled her and grabbed her by the neck.  Dubs told James that he wanted to kill her.  Due to the difference in size, James found it impossible to defend against Dubs's attack.  James begged Dubs not to kill her because she has a son and did not want to die. Thereafter, Dubs stopped his attack, picked James up off the floor, walked her over to a mirror and said, "look what you made me do."  James suffered several bruises and abrasions to her face, neck, and wrists.  James was also

bleeding from her nose and had fingernail marks on her neck from being choked.

Eventually, James went to a friend's house and called the police. Officers arrived at James's location, and observed the bruising and abrasions that James had suffered. James gave the officers consent to enter her apartment and provided them with a key. The officers arrived at James's apartment, and announced their presence. Dubs attempted to flee out of the second story window. Officers prevented Dubs from escaping and arrested him.

On March 23, 2016, after a jury trial, Dubs was found guilty of the above-mentioned crimes. On April 29, 2016, the trial court sentenced Dubs to a term of 5 to 10 years in prison for aggravated assault.[1]

On June 10, 2016, Dubs filed a Motion to File Notice of Appeal *Nunc Pro Tunc*, which the trial court granted. Dubs thereafter timely filed a Notice of Appeal and a court-ordered Pa.R.A.P. 1925(b) Concise Statement.

On appeal, Dubs raises the following question for our review: "Whether the Commonwealth failed to present sufficient evidence in order to convict [Dubs] beyond a reasonable doubt of aggravated assault, because the Commonwealth failed to prove that [he] intentionally, knowingly, or recklessly caused or attempted to cause serious bodily injury to [James]?" Brief for Appellant at 4.

---

[1] The simple assault and recklessly endangering another person convictions merged for sentencing purposes.

We apply the following standard of review when considering a challenge to the sufficiency of the evidence:

> The standard we apply in reviewing the sufficiency of the evidence is whether[,] viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence received must be considered. Finally, the finder of fact[,] while passing upon the credibility of witnesses and the weight of the evidence produced[,] is free to believe all, part or none of the evidence.

*Commonwealth v. Talbert*, 129 A.3d 536, 542-43 (Pa. Super. 2015) (citation omitted).

Dubs argues that the evidence was insufficient to support his aggravated assault conviction because choking and striking James with an open hand fails to demonstrate that he attempted to cause serious bodily injury. Brief for Appellant at 11. Dubs asserts that since he had complete control of James in his intoxicated state, and did not strike her with a closed fist or squeeze her neck as hard as he could, he did not have the intent to cause serious bodily injury. *Id.* at 12-13. Dubs posits that, had he wanted

- 4 -

to cause serious bodily injury to James, he would have struck her with a closed fist, or choked her more forcefully with both hands. *Id.* at 13.

A person is guilty of aggravated assault, in relevant part, "if he … attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life[.]" 18 Pa.C.S.A. § 2702(a)(1). Serious bodily injury is defined as "[b]odily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." *Id.* § 2301.

"A person commits an attempt when, with intent to commit a specific crime, he does any act which constitutes a substantial step toward the commission of that crime." *Id.* § 901(a). "An attempt under [subsection] 2702(a)(1) requires a showing of some act, albeit not one causing serious bodily injury, accompanied by an intent to inflict serious bodily injury." *Commonwealth v. Matthew*, 909 A.2d 1254, 1257 (Pa. 2006). "The intent to cause serious bodily injury may be proven by direct or circumstantial evidence." *Id.* In determining whether a defendant possessed the intent to inflict serious bodily injury, the court must look at the totality of the circumstances,

> including evidence of a significant difference in size or strength between the defendant and the victim, any restraint on the defendant preventing him from escalating the attack, the defendant's use of a weapon or other implement to aid his

attack, and his statements before, during, or after the attack which might indicate his intent to inflict injury.

*Id.*

Here, the record establishes that Dubs pinned James to the bed by straddling her chest, while simultaneously choking her and striking her with an open hand several times across the face. *See* N.T., 3/21/16, at 86-87, 127-28. The force with which Dubs choked James was enough to leave bruising and fingernail marks around her neck. *See id.* at 90, 91. James also stated that, while Dubs was choking her, she had difficulty breathing, almost to the point of losing consciousness several times. *See id.* at 88, 129. Additionally, after James attempted to escape Dubs, he again choked her. *See id.* at 89. James made several attempts to kick and push Dubs away from her when they were both on the floor; however, Dubs was bigger and stronger. *See id.* at 133. Further, Dubs stated to James that he wanted to kill her while he straddled and choked her on the floor. *See id.* at 132.

Viewing the evidence in a light most favorable to the Commonwealth, we conclude that the record establishes that Dubs attempted to cause serious bodily injury to James. Regardless of whether Dubs struck James with an open hand or closed fist, his actions of choking James and stating his desire to kill her are sufficient to demonstrate that Dubs possessed the necessary intent to cause serious bodily injury. *See Matthew*, 909 A.2d at 1259 (stating that threats to kill the victim are sufficient to establish intent

to inflict serious bodily injury); *see also Commonwealth v. Russell*, 460 A.2d 316, 320 (Pa. Super. 1983) (noting that the choking of a victim may permit an inference of an intent to cause serious bodily injury).[2]  Thus, we conclude that the evidence was sufficient to sustain Dubs's conviction of aggravated assault.  *See Matthew*, 909 A.2d at 1259.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/13/2017

---

[2] To the extent Dubs raises a defense of voluntary intoxication, such a defense is not available, "nor may evidence of such condition[] be introduced to negative the element of intent of the offense[.]"  18 Pa.C.S.A. § 308.